631 So.2d 30 (1994)
STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff-Appellee,
v.
HARTFORD INSURANCE COMPANY OF The SOUTHEAST, Defendant-Appellant.
No. 25419-CA.
Court of Appeal of Louisiana, Second Circuit.
January 19, 1994.
Walker, Passman & Michaels by H. Gregory Walker Jr., Alexandraia, for appellant.
Hayes, Harkey, Smith, Cascio & Mullens by Charles S. Smith, Monroe, for appellee.
Before MARVIN, SEXTON and BROWN, JJ.
BROWN, Judge.
State Farm Fire & Casualty Company, claiming to be an excess insurer, settled a potential claim against its insured prior to the institution of a lawsuit. Thereafter, State Farm sued the alleged primary insurer, Hartford Insurance Company of the Southeast, to recover the amount it paid in the settlement. The trial court rendered judgment in favor of State Farm and Hartford appealed. We reverse and render judgment in favor of Hartford.

FACTS
Dr. James Wolff was one of ten partners in Mallard Farms Limited Partnership ("Mallard Farms"). The partnership purchased approximately 850 acres of land in Richland Parish and farmed rice on 245 of these acres. The partnership rules permitted the partners to duck hunt on the property with two guests. At one location on the property was a sunken steel duck blind which was not equipped with a dog box or gun rack.
On November 18, 1984, Dr. Wolff took Tim Harvey and Ed Jones duck hunting on the property. The trio, along with Dr. Wolff's dog, Misty, hunted from the sunken blind. Because ducks were flying, they decided to bring the dog into the blind. It had been raining and water stood at mid-calf level in the blind. Dr. Wolff put his shotgun on safety and placed it flat down on the bench located in the blind. The dog hit Dr. Wolff's *31 shotgun when she entered the blind. The shotgun discharged and Tim Harvey was struck in the right leg. As a result of the injury, Harvey's right leg was amputated above the knee.

INSURANCE POLICIES
At the time of the accident, there were three insurance policies in effect. Dr. Wolff had a personal liability policy with limits of $100,000 and an umbrella policy which extended coverage to $1,000,000. Both policies were issued by State Farm and contained language declaring that they were "excess over other valid and collectible insurance."
Hartford had issued to the Mallard Farms Partnership a liability policy with bodily injury limits of $1,000,000 per occurrence. Hartford's policy did not contain the "other insurance" language found in the State Farm policies. The Hartford policy speaks of contribution to be determined by what is provided by other insurance. The Hartford policy included as an insured "any partner ... but only with respect to his liability as such."

DISCUSSION
State Farm Claim Superintendent, Charles Price, was notified of the accident and injury to Tim Harvey on November 20, 1984. Statements and medical information were obtained. At this time, Price was unaware of the existence of the Hartford policy.
Price determined that Harvey had sustained significant injuries and that Dr. Wolff would probably be found at fault. Price reached a verbal agreement to settle with Harvey on June 14, 1985, for $361,479.38; however, the settlement was not consummated until five months later.
Shortly after the verbal settlement agreement, Price learned of the Hartford policy issued to Mallard Farms. On June 25, 1985, Price notified Hartford of the claim. Although Hartford denied coverage, Price instructed his attorney to proceed with the settlement which was concluded on November 14, 1985. At the time of settlement no lawsuit had been filed and Harvey reserved his rights to sue Hartford, Mallard Farms and the manufacturer and/or seller of the shotgun and its ammunition. Dr. Wolff and State Farm were released in the settlement. Both Dr. Wolff and State Farm obtained a partial subrogation from Harvey against Mallard Farms and Hartford to the extent of all settlement payments made by Dr. Wolff and State Farm.
Harvey sued Hartford and Mallard Farms. This action was settled for $155,000.[1] The settlement released Hartford, Mallard Farms and all of its partners. State Farm filed this action against Hartford seeking reimbursement through legal and conventional subrogation of monies paid by State Farm to Harvey.

WHO IS THE PRIMARY INSURER?
A reading of each policy reveals the following:
1. State Farm ($100,000 policy)

Other InsuranceCoverage LPersonal Liability
This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy. (emphasis added).
2. State Farm ($1,000,000 umbrella policy)

Other Insurance
This policy is excess over any other valid and collectible insurance except:
a. Insurance written specifically as excess coverage over the retained limit for Coverage L; or
b. Insurance written specifically as excess coverage over the limits of this policy. (emphasis added).
3. Hartford ($1,000,000 policy)

Other Insurance
The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When *32 this insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance ... (emphasis added).
State Farm policies primarily cover Dr. Wolff's fault as the owner and handler of the dog; however, they claim that because of their "Other Insurance" provision, they became excess policies over any other valid and collectible liability insurance. (emphasis added). The Hartford policy insures the partnership and each partner "with respect to his liability [as a partner]", i.e., when the partner is engaged in the business of the partnership.
The parties to this action stipulated that Dr. Wolff was negligent and that his negligence caused the accident. No evidence was presented that the duck blind was defective. Without further explanation, we cannot conclude that the blind was defective simply because it had no dog box or gun rack. Thus, Hartford provided "valid and collectible insurance" only if Dr. Wolff was engaged in an activity of the partnership. To resolve this case, however, we are not required to determine whether hunting was a partnership activity. We pretermit this issue for the following reasons.
This is not an action where a policy was specifically written to be excess over a named underlying policy nor are we presented with the situation where such an excess insurer was forced to defend a lawsuit because of the neglect of the primary carrier. See Great Southwest Fire Insurance Co. v. CNA Insurance Cos., 557 So.2d 966 (La. 1990); American Home Assurance Company v. Commercial Union Assurance Company, 379 So.2d 757 (La.App. 4th Cir.1979); Maryland Casualty Company v. Marquette Casualty Company, 143 So.2d 249 (La.App. 4th Cir.1962). Instead, we have State Farm covering Dr. Wolff in his individual capacity and Hartford covering Dr. Wolff as a partner. It was stipulated that Dr. Wolff was negligent and thus, the active tortfeasor. Dr. Wolff's personal fault was insured by State Farm. Hartford insured Mallard Farms, whose liability was derivative or passive, if Dr. Wolff was engaged in a partnership activity. Notwithstanding the "Other Insurance" clause in State Farm's policies, we cannot say on this record that State Farm was the excess insurer. Dr. Wolff, in any capacity, was the active tortfeasor. The partnership entity is only derivatively liable if Dr. Wolff was engaged in a partnership activity. To place the primary liability for an accident upon the party who is the most responsible for the loss and who was in the best position to have avoided the incident could be considered sound public policy which encourages the negligent party to exercise due care. See, e.g., Liberty Mutual Insurance Co. v. Aetna Casualty & Surety Co., 168 A.D.2d 121, 571 N.Y.S.2d 735 (N.Y.App.Div.1991); Utica Mutual Insurance Co. v. Preferred Mutual Insurance Co., 149 Misc.2d 723, 566 N.Y.S.2d 831 (N.Y.Sup. Ct.1991): St. Paul Insurance Co. v. Industrial Underwriters Insurance Co., 214 Cal. App.3d 117, 262 Cal.Rptr. 490 (Cal.Ct.App. 5th Dist.1989); 16 Couch On Insurance 2d § 62:65 (1966 & Supp.1993).
Under these circumstances State Farm cannot compel Hartford to pay or reimburse, wholly or in part, State Farm for its expense of settling the claim against Dr. Wolff, individually.

DECREE
REVERSED. JUDGMENT IS RENDERED rejecting the demands of State Farm Fire & Casualty at its cost.
NOTES
[1] Timothy Richard Harvey, et ux v. Browning Arms Company, et al, No. 26,520 (Fifth Judicial District Court, Richland Parish).